## Commonwealth *v.* Dixon, Appellant.

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Lewis L. Maltby, Elaine DeMasse,* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Harry M. Spaeth, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,*

Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 24, 1975:

Judgment of sentence reversed and the record remanded for a new trial.

HOFFMAN, J., filed an opinion in support of reversal, in which SPAETH, J., joins.

CERCONE, J., filed an opinion in support of reversal, in which JACOBS and SPAETH, JJ., join.

VAN DER VOORT, J., filed a dissenting opinion, in which WATKINS, P. J., and PRICE, J., join.

OPINION IN SUPPORT OF REVERSAL BY HOFFMAN, J.:

Appellant contends that his conviction should be reversed and a new trial granted in light of *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), and *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974).[1]

At approximately 7:30 p.m., on November 3, 1972, Officer Colella of the Philadelphia Police Department responded to a radio call that reported a disturbance in a bar located at 9th and Clearfield Streets in Philadelphia. The officer observed appellant wrestling on the floor with two other men. The officer left the bar to request addi-

---

1. Appellant also contends and the Commonwealth concedes that appellant's sentence was illegal. Appellant received concurrent one to four year sentences on charges of assault and battery and assault and battery in resisting arrest. The maximum term of imprisonment allowed for assault and battery under the Penal Code, Act of June 24, 1939, P.L. 872, §708, 18 P.S. §4708, repealed by the Act of December 6, 1972, P.L. 1482, No. 334, §5, effective June 6, 1973, was two years. The maximum penalty for obstructing an officer in performing his duty was one year's imprisonment and/or a fine of $500.00. §4314. Under the specific mandate of *Commonwealth v. Nelson*, 452 Pa. 275, 305 A. 2d 369 (1973), in which the same charges were involved as in the instant case, the two offenses merged for purposes of sentencing. Because we remand for a new trial, we do not reach this issue.

tional assistance. In the interim, another officer, Edward McIlvaine, also answered the call. As Colella reentered the bar, he saw appellant attack McIlvaine with a bar stool. Appellant then knocked a woman from another stool and attacked Colella. The officers finally subdued appellant with their nightsticks. According to the officers' trial testimony, appellant carried on "like a wild man" throughout the incident.

After appellant was handcuffed, a third officer, Stanley Pables, transported the appellant to the emergency room of Episcopal Hospital. Both Pables and Edward Turner, a Nursing Assistant at the hospital who testified as a defense witness, stated that when the handcuffs were removed in the emergency room, appellant became "very wild" and that "he just went berserk."

Appellant was subsequently indicted and charged with assault and battery and resisting arrest. On February 22, 1974, the case was called for trial at which time appellant waived his right to a jury. On that date, the court heard all of the witnesses, including the appellant who gave his own account of the incident. The appellant did not contest the prosecution's account, but argued that he was not sane at the time of the incident. Appellant testified that he remembered having a couple of drinks in the bar and being struck from behind. The next thing that he recalled was waking up in the hospital. He admitted to having been hospitalized for seventeen days in 1968, at Trenton State Hospital for observation and for seven days in 1969, at Philadelphia General Hospital for treatment. After hearing appellant's testimony, the judge stated that he would defer adjudication and order a "total psychiatric workup." Finally, on May 15, 1974, appellant reappeared before the trial court which rejected appellant's claim of insanity and was found guilty on all bills. The court pronounced sentence of one to four years, to run concurrently, on the charges of assault and battery and assault and battery in resisting arrest.

The Supreme Court held in *Commonwealth v. Rose,* supra, that the Commonwealth has the burden in a first degree murder case of proving beyond a reasonable doubt the specific intent to kill. The Court held that it was reversible error to require that the accused prove his defense of intoxication by a preponderance of the evidence: ". . . the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime. One of such elements in first degree murder is, of course, a specific intent to kill." 457 Pa. at 389, 321 A.2d at 884. In *Commonwealth v. Demmitt,* supra, the Court upheld the rule that the prosecution may prove a defendant's sanity by testimony of lay witnesses. See *Commonwealth v. Zlatovich,* 440 Pa. 388, 269 A.2d 469 (1970). The Court did, however, underscore the principle of law that "the Commonwealth can no longer rely upon a presumption of sanity, but instead must offer evidence to show that [the accused] was sane." 456 Pa. at 483, 321 A.2d at 632. "When the question of sanity is at issue and the presumption of sanity has disappeared the evidence must be sufficient to support a finding of sanity beyond a reasonable doubt." 456 Pa. at 482, 321 A.2d at 631.

The Commonwealth contends that the holdings of *Rose* and *Demmitt* should not be applied retroactively. Essentially, the position of the Commonwealth is that because *Rose* was decided as a matter of state evidentiary law, its holding was not constitutionally mandated, and thus is not entitled to retroactive application. See, e.g., *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973). There is language in *Rose* to support that conclusion: ". . . our decision need not rest on federal constitutional grounds. It is not necessary for us to speculate that the *Winship* [*In re Winship,* 397 U.S. 358 (1970)] requirement of proof beyond a reasonable doubt of all essential facts encompasses the disproof of other facts . . . which, if found, would establish the nonexistence of an essential fact. . . . Our determination which follows of the

issue presented is in terms of state evidentiary law." 457 Pa. at 386, 321 A.2d at 882-83. We are compelled to hold that *Rose* and *Demmitt* are retroactive by a recent decision of the Supreme Court. The Court filed the following per curiam opinion: "And now, this 11th day of February, 1975, the petition for allocatur is granted, the order of the Superior Court affirming the judgment of sentence is reversed and a new trial is awarded. See *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974) and *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974)." *Commonwealth v. Simms,* 462 Pa. 38, 333 A.2d 477 (1975). The dissenting opinion of Chief Justice JONES leaves no question that the per curiam opinion decided the retroactivity issue: "Even if the new evidentiary rule expressed therein is extended, it should not be given retroactive effect." See also, *Commonwealth v. Simms,* 228 Pa. Superior Ct. 85, 111, 324 A.2d 365, 371 (1974)[2] (HOFFMAN, J., dissenting opinion). Simms was tried in advance of the Court's *Rose* and *Demmitt* decisions.[3]

---

2. *Simms* not only involved the question of the appellant's ability to form a specific intent, but also the question of the right of the appellant to have the jury deliberate on psychiatric evidence to lessen the degree of offense due to the actor's "diminished capacity." "[Appellant] . . . contends that since he introduced evidence tending to show a lack of intent as to the criminal acts charged, he is entitled to an instruction on the doctrine of diminished responsibility. In addition, appellant maintains that since this evidence was in support of his plea of not guilty by reason of insanity, the Commonwealth should bear the burden of proving sanity beyond a reasonable doubt." 228 Pa. Superior Ct. at 87-88, 324 A. 2d at 366.

3. Because our Court decided *Simms* without the benefit of the Supreme Court's decisions, Justice ROBERTS voted to remand *Simms* to our Court: "It is apparent that the Superior Court decided this case without the benefit of our decisions in *Commonwealth v. Rose,* 457 Pa. 380, 321 A. 2d 880 (1974), and *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A. 2d 627 (1974). See *Commonwealth v. Simms,* 228 Pa. Superior Ct. 85, 324 A. 2d 365 (1974).

Therefore, because the Supreme Court has given retroactive effect to *Rose* and *Demmitt,* we reverse appellant's conviction and remand the case for a new trial at which the Commonwealth must prove beyond a reasonable doubt that appellant was sane at the time of the alleged offense.

SPAETH, J., joins in this opinion.

_____

OPINION IN SUPPORT OF REVERSAL BY CERCONE, J.:

I reluctantly support reversal of this case simply because, whenever no substantial principles would be compromised by accommodation, this court should vigorously strive to avoid affirmance based on equal division. In that regard, I have concluded that Judge HOFFMAN'S estimation of the standards employed by the lower court in evaluating appellant's insanity defense are more likely correct. As indicated below, the courts of this Commonwealth had uniformly rejected the current principle provided by *Commonwealth v. Demmitt,* 456 Pa. 475 (1974)—that the Commonwealth must prove the sanity of the defendant beyond a reasonable doubt when some credible evidence has been offered to the contrary.

On the other hand, I disagree with the opinion of the dissenters that appellant herein failed to offer sufficient evidence to "shift" the risk of non-persuasion to the Commonwealth; at least, I would not so hold as a matter of law. This being so, I still wish to record my view on the procedural aspect of this appeal.

This case was tried before a judge sitting without a jury on February 22, 1974. After the judge received the evidence, including Dixon's testimony that he had no recollection of the incident, he postponed adjudication of

_____

Therefore, in the interest of orderly appellate procedure, I would vacate the order of the Superior Court and remand to that court for reconsideration in light of *Rose* and *Demmitt.*" 462 Pa. at 39, 333 A.2d at 477.

the case and ordered a psychiatric and neuropsychiatric report to be prepared. After receiving and analyzing the report, on May 22, 1974, the judge entered the sentences complained of herein.

In sum, the report indicated, as the trial judge found, that Dixon "is a very hostile person who is unable to or refuses to control his impulses." The report did conclude, however, that Dixon was competent to stand trial. On this basis the court determined that "the defendant was able to have the requisite mens rea at the time of the incident." Nowhere in the court's opinion is there any mention of Dixon's failing to show his insanity by the preponderance of the evidence, or even his failure to offer credible evidence sufficient to overcome the presumption of sanity. Furthermore, at the sentencing hearing the court clearly stated that it considered Dixon's insanity defense as going to his state of mind at the time the offenses were committed:

"If a person is totally out of it mentally, then, of course, he could not have mens rea. If he does have some understanding of what he is doing and is merely a hostile person who is unable to or refuses to control his impulses, he very well would have mens rea. . . . "However, I do feel that after reading the reports, he just fails to control himself. Of course, your argument is he doesn't have the ability to control himself, whereas the psychiatrists feel that he does, to some degree, or at least to enough of a degree to make him competent.

"The Court would then come to the conclusion that there was mens rea necessary to commit the act for which he is charged. Under those circumstances, the Court is going to find him guilty on all Bills of Indictment. . . ."

One does not need an extensive recitation of authority to know that the mens rea of a crime is an element and, therefore, must be proved by the Commonwealth beyond

a reasonable doubt. See, e.g., 22 C.J.S., Criminal Law §29 (1961). In weighing the evidence in the instant case the lower court expressly stated that the Commonwealth proved its case beyond a reasonable doubt. Therefore, it would not be unreasonable to infer from the court's opinion and the record that it found, *beyond a reasonable doubt,* that Dixon was sane at the time the offenses were committed.

On the other hand, the court did not have the benefit of *Commonwealth v. Demmitt,* 456 Pa. 475 (1974), which changed the law in Pennsylvania to require that the Commonwealth prove the accused's sanity beyond a reasonable doubt so long as the accused has offered some credible evidence sufficient to overcome the presumption that he was sane. At the time of the trial the applicable law appeared to be *Commonwealth v. Zlatovich,* 440 Pa. 388 (1970), in which the majority had stated:

> "It is next complained that the trial court erred in its instructions to the jury on the burden of proof as to the issue of insanity. In the course of the charge, the court stated, in part, that the accused had the burden of proving insanity by the preponderance of the evidence and that the Commonwealth did not have to affirmatively prove sanity. Appellant argues that it was erroneous to so instruct the jury; however, this same contention was rejected by a majority of this Court in Commonwealth v. Vogel, [440 Pa. 1 (1970)] and nothing would be gained by further discussion here." *Id.* at 393.

However, in *Demmitt* the Court unanimously agreed that:

> "We repeat that there must be sufficient evidence from any source whatsoever to support a finding of sanity beyond a reasonable doubt." 456 Pa. at 482.

In the instant case, there can be no doubt that there was sufficient evidence for the court to conclude, beyond a reasonable doubt, that the appellant was sane. The only question is whether the court did, in fact, employ that

standard. In the absence of any indications to the contrary in the record and, indeed, some indications that the "reasonable doubt standard" was employed, I would prefer postponing our decision in this case and remanding so that the court might clarify the basis of its decision.[1] The division of this court highlights the appropriateness of that course. Unfortunately, that same division compels me to reach a decision on the basis of the current state of the record; and, on that basis I am only slightly more persuaded than not that a new trial is necessary.

JACOBS and SPAETH, JJ., join in this opinion.

---

DISSENTING OPINION BY VAN DER VOORT, J.:

I must respectfully dissent.

While I do not challenge the findings of my Brethren voting in support of reversal, regarding the retroactive application of *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974) and *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974), and I also do not challenge the fact that the sentences are incorrect, I feel those supporting reversal have seriously misconstrued the holdings in those cases and, I further believe the appellant herein, on the basis of the record, is not entitled to take advantage of the holdings in those cases.

In *Commonwealth v. Rose,* supra, the Supreme Court stated:

> "We emphasize that our insistence upon the Commonwealth's burden to prove beyond a reasonable doubt all elements of the crime does not require it to disprove a negative. Thus, to enable a defendant to seek to negate specific intent by reliance on the fact of his intoxication, there must be evidence in the case sufficient to place in issue that fact concerning de-

---

1. Indeed, in his brief the appellant does not request that he be granted a new trial on this basis, but only asks that we remand the case for reconsideration by the court below.

fendant's mental condition. Such evidence may be adduced by the defendant as part of his case, or, conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. Once a defendant has come forward with such evidence, or it is in the case otherwise, the Commonwealth, as we have indicated above, may introduce testimony to refute it, but is under no duty to do so." 457 Pa. at 389-90, 321 A.2d at 884-5. In *Rose,* the court noted that the risk of "non-persuasion" remains with the Commonwealth.

In *Commonwealth v. Demmitt, supra,* where the insanity defense was discussed, it was specifically held that:

"[t]he law in Pennsylvania is that in order to establish insanity, a defendant must still meet at least one part of the two-pronged M'Naghten test. There must be evidence in the case from whatever source that he did not know the nature and the quality of his act or that he did not know that it was wrong." 456 Pa. at 483, 321 A.2d at 632.

The appellant was found guilty of assault and battery and assault and battery in resisting arrest. There was a total of three (3) bills of indictment. The appellant was engaged in a disturbance in a tavern in the City of Philadelphia. Two police officers responded to it and found appellant fighting with two other men. He was kicking, punching and shouting. When they tried to break up the fight, appellant attacked the officers with bar stools. The officers testified that appellant acted "like a wild man". He was subdued and taken to the Episcopal Hospital where, when the handcuffs were removed, he again became unruly and the third officer testified he was "very wild" and "just went berserk." The appellant himself testified that he knew nothing of what happened in the tavern except that he was hit on the back of the head and woke up in the hospital. Appellant said he had been hospitalized in 1968 for seventeen (17) days for

psychiatric treatment and again for seven (7)· days in 1969.

The evidence indicated clearly that the appellant was disorderly and unruly. There was no testimony as to the nature of his psychiatric treatment in either hospitalization. The majority holds that upon this vague and equivocal testimony regarding some mental instability the Commonwealth is put to the Herculean task of proving that appellant was sane at the time he became disorderly. This extends the holdings in *Rose* and *Demmitt*. It expands the demands upon the Commonwealth to an unwise extent.

In *Demmitt,* Dr. Bernard J. Willis, Assistant Superintendent of Farview State Hospital testified that appellant Demmitt was "seriously, severely insane at the time. I think he did not know the nature and quality of his act. I do not think he was in a state where he could exercise any control over his behavior. I think he was completely disassociated, absolutely insane . . . in my opinion he did not know the difference between right and wrong." Three other psychiatrists offered corroborating testimony to that of Dr. Willis. They could not testify to his insanity at the time of the offense but they did testify that appellant Demmitt had been under treatment before the killing for a serious condition of schizophrenia. Our Supreme Court held that with this substantial testimony the question of insanity was placed in issue, that the presumption of sanity was overcome and that the Commonwealth must prove sanity beyond a reasonable doubt.

The instant case illustrates why the majority in *Demmitt* retained the presumption that the accused is sane. Otherwise on the flimsiest testimony the Commonwealth would be put improperly to the burden of proving sanity beyond a reasonable doubt.

Appellant's own testimony, together with the testimony adduced by the Commonwealth, do not provide evidence supportive of either part of the two-pronged

M'Naghten test. The evidence produced fails to establish that appellant did not know the nature and quality of his act nor that he did not know that his acts were wrong.

For these reasons I am compelled to dissent from the decision to reverse.

I would affirm the convictions and remand the cases for re-sentencing.

WATKINS, P. J., and PRICE, J., join in this dissenting opinion.