366 A.2d 276

**COMMONWEALTH of Pennsylvania**

v.

**William David LOCCISANO, Appellant**
**(two cases).**

Superior Court of Pennsylvania.

Nov. 22, 1976.

James M. Keller, Ellwood City, for appellant.

Howard Klebe, Asst. Dist. Atty., New Castle, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

Appellant herein, William Loccisano, has brought two appeals for review by this Court. The first is from the judgment of sentence at No. 315, 1971 in the court below charging a violation of The Drug, Device and Cosmetic Act [1] for possession of a small quantity of marijuana. The second is from the judgment of sentence at No. 688A, 1972 wherein the appellant was convicted of a violation of The Controlled Substance, Drug, Device and Cosmetic Act [2] for selling marijuana to a police officer. In his appeal from the judgment at No. 315, 1971, charging possession, appellant maintains that his jury was

---

[1]. Act of September 26, 1961, P.L. 1664, § 1, *et seq.*, 35 P.S. § 780–1 *et seq.*

[2]. Act of April 14, 1972, P.L. 233, No. 64, § 1, *et seq.*, 35 P.S. § 780–101 *et seq.* (Supp.1975–76).

not properly selected in that 18 to 21 year olds were systematically excluded. On appeal from the judgment at No. 688A, 1972, charging appellant with sale of marijuana, he contends that the burden of proving his defense of entrapment was improperly allocated. We will review these two appeals separately, first considering No. 315, 1971, the charge of possession.

## I

On March 22, 1971 a search warrant was obtained and a search conducted of appellant's home. The object of the search was to discover marijuana. A small quantity of marijuana, approximated to be less than four grams, was found in the refrigerator and two pipes containing a residue of marijuana were found about the house. Appellant was subsequently indicted for possession of a narcotic drug in violation of The Drug, Device and Cosmetic Act. He was found guilty by a jury on June 1, 1972 and sentenced to serve 30 days imprisonment and pay a fine.

Throughout the proceedings appellant consistently registered his objections to the array of trial jurors contending that electors between the ages of 18 to 21 years were systematically excluded from the jury lists.[3]

3. The appellant also objected that the evidence was insufficient to sustain the verdict. He maintains that it was not shown that the defendant had control over the marijuana found in the drip tray of the refrigerator and in the two pipes elsewhere in the house because a third person was found in the living room with the appellant at the time of the search. Commonwealth v. Updegrove, 223 Pa.Super. 7, 296 A.2d 854, allocatur refused, 223 Pa.Super. xxxv (1972); Commonwealth v. Schulhoff, 218 Pa.Super. 209, 275 A.2d 835 (1971). However, appellant was identified as the sole lessee of the premises and there was no evidence presented at trial to suggest any other occupants. Because some of the contraband was found in a place normally accessible only to a resident of the premises, the drip tray of the refrigerator, it can be reasonably inferred that the appellant had knowledge and control of the marijuana, as well as the power to control devolving from his position as sole lessee of the home. Commonwealth v. Ferguson, 231 Pa.Super. 327, 331 A.2d 856 (1974); Commonwealth v. Updegrove, supra.

In support of this contention he demonstrated that the jury panel was randomly chosen from the voter registration lists of Lawrence County. The list used to select prospective jurors for the 1972 term of court in which appellant was tried was dated November 3, 1970. Since the minimum voting age in 1970 was 21 years,[4] the youngest elector who could have been chosen for appellant's jury panel in 1972 would be about 23 years old.

The selection of juries in Lawrence County, being a county of the 5th class, is provided for by the Act of April 10, 1867, P.L. 62, § 2, 17 P.S. § 942. By the terms of this act, persons to serve as jurors are to be selected "from the whole qualified electors of the respective county." It is appellant's position that at the time of his trial the whole qualified electorate included citizens from the age of 18 upwards, but his jury panel could not include anyone under the age of 23.[5]

Appellant relies heavily on the recent Supreme Court case of *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The Supreme Court there held that a male defendant was improperly convicted of aggravated kidnapping, during which he committed rape and robbery at knifepoint, because women were systematically excluded from the jury lists. Although women

---

4. The Pennsylvania Legislature amended the statute setting forth the qualifications of electors to conform to the twenty-sixth amendment to the United States Constitution by including all citizens over eighteen years of age on July 9, 1971. Act of July 9, 1971, P.L. 197, § 1, *amending* Act of June 3, 1937, P.L. 1333, art. VII, § 701, *as amended*, 25 P.S. § 2811. (Supp.1975–76). Prior to this amendment the minimum age was 21.

5. At the time of his trial, appellant was 26 years of age. The fact that he himself was not a member of the excluded group does not deny him standing to object to the jury selection process, because his claim is that he was entitled to a jury drawn from a fair cross section of the community. "[T]here is no rule that claims such as [appellant] presents may be made only by those defendants who are members of the group excluded from jury service." *Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S.Ct. 692, 695, 42 L.Ed.2d 690 (1975).

in that judicial district represented 53 per cent of those eligible for jury service, state law prohibited selecting a woman who had not previously filed a written statement requesting consideration for jury service. This system effectively eliminated representation on the jury panel of an identifiable segment of the community so large as to comprise over half the local populace. The male defendant in the case was therefore held to have been denied his right to be tried by a jury broadly representative of a cross-section of the community as required by the constitution.

In the present case we cannot conclude that appellant has shown that young voters were excluded from his jury panel with the type of systematic discrimination that was evident in regard to women voters in *Taylor v. Louisiana*, supra. Here it was shown that the jury wheel was filled in 1971 for the year of 1972. Because the procedure of mailing out notices and receiving responses from prospective jurors takes about eight months, the most recent list of electors available at the time the selection procedure began was that of November 3, 1970. This method of jury selection is followed each year, so each year there will be an identical time gap between the list used and the actual drawing of a jury. We recognize that the consequence of this delay is to create a hiatus during which the youngest, newly registered voters will not be called for jury duty; however some allowance of time must be granted for the administrative process to function and a group of prospective jurors to be assembled.

The Supreme Court recognized the necessity for some time lag in jury selection in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). There the appellant claimed that the 18 to 24 age group had been excluded when the jury wheel was not filled for almost four years. The Court noted that "some play in the joints of the jury-selection process is necessary in

order to accommodate the practical problems of judicial administration. Congress could reasonably adopt procedures which, while designed to assure that 'an impartial jury [is] drawn from a cross-section of the community,' *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946); *Smith v. Texas*, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84 (1940), at the same time take into account practical problems in judicial administration. . . . Invariably of course, as time goes on, the jury wheel will be more and more out of date . . .. But if the jury wheel is not discriminatory when completely updated at the time of each refilling, a prohibited 'purposeful discrimination' does not arise near the end of the period simply because the young and other persons have belatedly become eligible for jury service by becoming registered voters." *Hamling v. United States*, supra at 138, 94 S.Ct. at 2918. *Accord, Commonwealth v. Cobbs,* 452 Pa. 397, 305 A.2d 25 (1973); *Commonwealth v. Fisher,* 447 Pa. 405, 290 A.2d 262 (1972).

Some administrative delay must be viewed as inevitable. How long a delay will be permitted in bringing a jury list up to date will necessarily depend on each particular case. In the instant case, appellant has not shown any deliberate discrimination against youthful voters. He has merely demonstrated that a period of two years elapsed before the lists containing the youngest voters following the twenty-sixth amendment became the basis for selection of a jury panel. Viewing these circumstances in light of the authority cited above, we cannot agree that appellant was denied his right to trial by an impartial jury representing a fair cross section of the community. Therefore, we must affirm the judgment of sentence.

## II

On September 19, 1973, appellant was tried before a jury on one count of selling marijuana in violation of The Controlled Substance, Drug, Device and Cosmetic Act. Two police officers testified at the trial that prior to August 14, 1972 arrangements were made with one Red Lytinen, an informer, to buy marijuana from the appellant. The officers testified that they did not know Red and that he was not paid by the police or given protection or favors by the police in connection with any crime or prosecution. They further testified that they did not know anything about his relationship with the appellant or where Red had gone after appellant's arrest. However, on August 14, 1972, according to plan, one officer accompanied Red to a prearranged meeting place and there, in the presence of Red, made a purchase of three quarters of an ounce of marijuana from appellant. The Commonwealth called two other witnesses, one a chemist who testified that the substance purchased tested positive for marijuana, and one rebuttal witness to introduce a prior criminal record of appellant to impeach his testimony.[6]

Appellant's defense was entrapment. His own testimony and that of his wife and two friends indicated that he had met the informer about six months before the sale and that Red had commenced visiting his house with great frequency about two weeks before the sale. During these visits, which numbered between eight and twelve according to appellant and his wife, Red would importune appellant and his wife to supply him with some

6. The record was of William Loccisano's prior conviction for possession of marijuana and it was introduced over strenuous objection by defense counsel. Appellant now objects on appeal that admission of the record was error. Due to our disposition of this case on other grounds, we will not reach this issue. However, for a review of cases on both sides of this question, see Annot., 61 A.L.R.3d 293 (1975) and the cases cited therein.

marijuana. In spite of repeated visits and requests appellant steadfastly denied dealing in drugs of any kind and refused to deliver marijuana from any other source. Finally, however, appellant agreed that he would contact someone he knew who had marijuana for the informer. He then acquired three quarters of an ounce of marijuana and took it to meet the informer at the designated place. When the informer and the officer arrived, appellant handed over the marijuana and received twenty dollars in return.

There is virtually no inconsistency between the evidence presented by the Commonwealth and that presented by the appellant in this case. Appellant did not deny that the sale occurred as testified to by the police. The Commonwealth did not present any evidence in conflict with appellant's evidence of entrapment. The trial judge charged the jury on entrapment defining the defense as it existed in the case law of this Commonwealth prior to the new Crimes Code.[7] In the course of the jury instruction the judge below stated that the defendant had the burden of proving by a preponderance of the evidence that, first, he was not disposed to commit the crime and, second, the conduct of the police officers was likely to induce the innocently disposed to commit a crime. On the basis of these instructions the jury found the appellant guilty of the offense charged and she was subsequently sentenced to one to two years in a state correctional institution and to pay a fine of $1.00.

It is the position of the appellant that the trial judge erred in refusing his suggested point for charge relating to the burden of proof in an entrapment defense. Had the judge charged on this point, the jury would have

7. The new Crimes Code includes a provision defining entrapment. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 313. The section is similar to the Model Penal Code § 2.13 (P.O. D.1962). The commentary to the Model Penal Code section can be found in Model Penal Code § 2.10, Comment (Tent.Draft No. 9, 1959).

been instructed that the Commonwealth has the burden of proving beyond a reasonable doubt that the crime was the product of the defendant's criminal design and not of an entrapment perpetrated by the police. Instead the jury was told that the defendant had to convince them by a preponderance of the evidence that he was not disposed to commit the criminal act in question, and it was the activity of the official which induced his criminal conduct. In light of the recent Pennsylvania Supreme Court rulings, *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Rose*, 457 Pa. 380, 321 A. 2d 880 (1974); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974), regarding the Commonwealth's burden of proving all elements of a crime, even when an affirmative defense is presented, we now hold that this instruction was in error.

At the time the alleged offense in the present case was committed, the law on entrapment in Pennsylvania was in accord with the position of the majority of the United States Supreme Court in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) and *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).[8] *Commonwealth v. Conway*, 196 Pa.Super.

8. The minority view of the Supreme Court as expressed in the dissenting opinions of Mr. Justice FRANKFURTER in *Sherman v. United States*, 356 U.S. 369, 378, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) and Mr. Justice ROBERTS in *Sorrells v. United States*, 287 U.S. 435, 453, 53 S.Ct. 210, 77 L.Ed. 413 (1932) focuses on the conduct of the police in inducing the criminal activity, rather than the predisposition of the defendant. "[This means] that in holding out inducements [the police] should act in such a manner as is likely to induce to the commission of crime only [those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise] and not others who would normally avoid crime and through self-struggle resist ordinary temptations. This test shifts attention from the record and predisposition of the particular defendant to the conduct of the police and the likelihood, objectively considered, that it would entrap only those ready and willing to commit crime." *Sherman v. United States*, supra 356 U.S. at 384, 78 S.Ct. at 826 (dissenting opinion by FRANKFURTER, J.). This position became the basis for the alternative formulation of the provision for the entrap-

97, 173 A.2d 776 (1961) ; *Commonwealth v. Werner,* 188 Pa.Super. 509, 149 A.2d 509, *allocatur refused,* 188 Pa.Super. xxviii (1959) ; *Commonwealth v. Kutler,* 173 Pa.Super. 153, 96 A.2d 160, *allocatur refused,* 173 Pa.Super. xxv (1953); *Commonwealth v. Wasson,* 42 Pa.Super. 38, *allocatur refused,* 42 Pa.Super. xxxi (1910). *See also, United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The test for entrapment outlined in these cases focuses on the defendant and his predisposition to commit the crime charged. "The defence of entrapment in Pennsylvania, as derived from our cases in the light of the other authorities just mentioned, arises only when a law enforcement officer, by employing methods of persuasion or inducement which create a substantial risk that persons not otherwise ready to commit the criminal act will do so, actually induces such a person to commit the act.

██ "This rule requires, before the defence becomes available, (1) a defendant not disposed to commit the crime, and also (2) police conduct likely to entrap the innocently disposed." *Commonwealth v. Conway,* supra 196 Pa.Super. at 103–04, 173 A.2d at 779–80 (footnote omitted).

This is not to say that artifice and strategem cannot be used by law enforcement officials and their agents to detect crime. Merely affording opportunities or facilities for the commission of crime by one who already had the criminal intent to engage in such a crime does not defeat the prosecution. *Commonwealth v. Wright,* 235 Pa. Super. 289, 340 A.2d 544 (1975) ; *Commonwealth v. Klein,* 222 Pa.Super. 409, 294 A.2d 815 (1972). However, if a defendant is not disposed to commit the crime but is nevertheless induced to participate in criminal be-

ment defense ultimately adopted by the Model Penal Code § 2.13 (P.O.D.1962); Model Penal Code § 2.10 (Tent.Draft No. 9, 1959), and later substantially adopted by the Pennsylvania Legislature in the new Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 313.

havior which originated through the creative activity of the law enforcement officials and their agents, entrapment can be found.

In the present case, appellant showed that the police informer, Red Lytinen, had befriended appellant and frequently visited his home socializing with his friends and family. The informer himself brought up the subject of drugs and requested appellant to get him some marijuana, first in exchange for other drugs and later for money. When appellant repeatedly refused, he persisted in his pleas for drugs in an effort to wear down appellant's resistance. These facts are parallel to those in both *Sorrells v. United States*, supra, which defined the entrapment defense, and *Sherman v. United States*, supra, where entrapment was found as a matter of law. In *Sorrells* the government prohibition agent gained the confidence of the defendant, a World War I veteran, by trading war stories with him about his old division, until defendant acquiesced in the agent's repeated requests for liquor. In *Sherman* the agent came to know the defendant through a program to overcome narcotics addiction, and after repeated efforts which the defendant at first attempted to resist, succeeded in inducing defendant to supply him with drugs and also return to the habit again. Despite the defendant's prior record in drug dealing and possession, entrapment was found as a matter of law. These two landmark cases have in common with the present case the allegation of the defendant that his intent to avoid crime was worn down by an agent who insinuated himself into the defendant's confidence and then pleaded with him to perform the criminal favor.

Had the Commonwealth witnesses supported the appellant's story in this case, we might be inclined to find entrapment as a matter of law. However, the Commonwealth witnesses neither support nor deny appellant's defense. The officers who relied on the informant to implicate the appellant in drug dealing did not know how

the informant contacted him or induced him to sell them marijuana. The informant could not be called to testify as his whereabouts were unknown to anyone. On these facts, plus the defendant's prior record for possession of marijuana, the jury was instructed that the defense had to prove by a preponderance of the evidence that appellant was not disposed to commit the crime and that the criminal intent did not arise in his mind but was produced by the creative activity of the police. *Commonwealth v. Harrison,* 228 Pa.Super. 42, 323 A.2d 848 (1974); *Commonwealth v. Klein,* supra.

■■ This burden of proof was misplaced. The Supreme Court stated in *Commonwealth v. Rose,* supra 457 Pa. at 389, 321 A.2d at 884 "[i]n any criminal prosecution, the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime." Although *Rose* concerned a first degree murder conviction and a defense of intoxication, the opinion discussed generally the burden of proof relating to all affirmative defenses. " 'As to all these claims for exoneration [self-defense, duress, insanity, intoxication], their truth goes in final analysis to the guilt, to the rightness of punishing, the accused. Thus it seems inconsistent to demand as to some elements of guilt, such as an act of killing, that the jury be convinced beyond a reasonable doubt, and as to others, such as duress or capacity to know right from wrong, the jury may convict though they have such doubt. Accordingly, the recent trend is to treat these so-called matters of defense as situations wherein the accused will usually have the first burden of producing evidence in order that the issue be raised and submitted to the jury, but at the close of the evidence the jury must be told that if they have a reasonable doubt of the element thus raised they must acquit.' " *Commonwealth v. Rose,* supra at 388, 321 A.2d at 884, *quoting* McCormick, Evidence § 341 at 802 (2d ed. 1972). *Accord, Commonwealth v. Graves,* supra; *Commonwealth v.*

*Vogel,* 458 Pa. 200, 321 A.2d 633 (1974); *Commonwealth v. Demmitt,* supra. *See also, Commonwealth v. Dixon,* 235 Pa.Super. 415, 341 A.2d 147 (1975).[9] The requirement that the Commonwealth prove each element of the crime charged beyond a reasonable doubt is not alleviated by the defendant's presentation of an affirmative defense. On the contrary, rather than be required to prove his freedom from guilt, a defendant is shielded by the presumption of innocence. Because it is the Commonwealth's burden to persuade the jury of defendant's guilt, the defendant is not required to present any evidence in order to prevail. In *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959) the Supreme Court noted that any requirement that the defendant prove the absence of some criminal element would be inconsistent with the presumption of innocence. "It is utterly inconsistent, therefore, for courts to hold the prosecution has the burden of proving every essential element beyond a reasonable doubt even where the defendant offers no evidence; but that if he does offer any evidence the prosecution is relieved of the burden to prove that one of the essential elements he challenges." *Commonwealth v. Bonomo,* supra at 230, 151 A.2d at 446.

In bringing this charge against the appellant the Commonwealth asserts that he sold a police officer marijuana because he was criminally inclined to engage in the sale of a prohibited substance; that the influence and cooperation of the officer and agent was irrelevant in bringing the sale to be because it was appellant's design or intent to make such a sale before it was suggested to him by the police or agent. The appellant's defense is that he had no intention of engaging in illegal activity until he was persuaded to do so by the officer's agent. The element in dispute is criminal intent. It is the Commonwealth's

**9.** The United States Supreme Court also appears to be cautiously proceeding in this direction. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

burden to present proof beyond a reasonable doubt of this element, just as it is the Commonwealth's burden to prove every element of the crime. It defies logic to require the Commonwealth to prove the presence of an element and at the same time demand that the defendant prove its absence. "There is no point in saying to a jury that the defendant must satisfy their minds of his innocence followed by a statement that he does not have to satisfy their minds but need only cause them to pause or hesitate as to his guilt." *Commonwealth v. Bonomo,* supra at 231, 151 A.2d at 446. Such a conflict in instructions effectually lightens the Commonwealth's burden.

■ ■ There can be no burden on a defendant to disprove an element of the offense. It is therefore error to instruct the jury that the defendant is required to prove that he had no predisposition to sell marijuana and that law enforcement officials by their conduct actually induced the crime. This result is not only in harmony with *Commonwealth v. Rose,* supra, and *Commonwealth v. Demmitt,* supra, but also is consistent with the federal courts' view of the burden in entrapment cases.[10] *See United States v. Watson,* 489 F.2d 504 (3d Cir. 1973); *Government of the Virgin Islands v. Cruz,* 478 F.2d 712 (3d Cir. 1973); *United States v. Silver,* 457 F.2d 1217 (3d Cir. 1972). We therefore reverse the judgment of sentence on this charge and grant appellant a new trial.

Judgment of sentence is affirmed on No. 315, 1971, charging possession of marijuana. Judgment of sentence is reversed on No. 688A, 1972, charging sale of marijuana, and the case is remanded.

CERCONE, J., files a concurring and dissenting opinion, in which VAN der VOORT, J., concurs in the result.

---

10. The defense of entrapment in the federal courts is defined by the majority position of the United States Supreme Court, as it was in Pennsylvania prior to the new Crimes Code.

538

SPAETH, J., concurs in the result of Part II of this opinion.

CERCONE, Judge (concurring and dissenting):

While I agree with Part I of the majority opinion, I disagree with the analysis and conclusion reached in Part II.

The majority is simply incorrect when it states: "The appellant's defense is that he had no intention of engaging in illegal activity until he was persuaded to do so by the officer's agent. *The element in dispute is criminal intent.*" (Majority opinion at 243 Pa.Super. p. 536, at p. 283). What the majority has done to reach its desired conclusion, I submit, is equivocate on the meaning of "intent."

The predisposition to commit a crime as used with respect to the entrapment defense has absolutely nothing to do with criminal intent in the instant case.[1] The criminal intent in question herein is whether appellant intended to sell a controlled substance (marijuana) at the time that he sold it. For the purpose of proving the offense, it makes no difference whether he "intended" to sell the marijuana one week or one minute before he did so; *a fortiori,* it matters little whether he would have formulated such a previous "intent" were it not for the actions of an agent provocateur.

The defense of entrapment rests upon a theory of estoppel; that is, the government is estopped from prosecuting an individual for committing a crime that would not have been committed without the provocation of the government. R. Perkins, Criminal Law 1035–36 (2d ed. 1969). Thus, the inquiry with respect to that defense is whether the intent to commit the crime *originated*

---

1. Indeed, in the vast majority of cases entrapment will have nothing to do with "criminal intent." There is, however, at least one situation where entrapment arguably vitiates intent. See R. Perkins, Criminal Law 1031–32 (2d ed. 1969). See also Crimes Code, 18 Pa.C.S.A. 313(a)(1) (1973).

with the defendant or with the government, and the intent of the actor at the time the crime was committed is irrelevant to the entrapment defense. *Id.* at 1033. It is apparent, therefore, that the majority is confusing the intent which denotes an element of a substantive crime, with "origination of intent" (or preferably, predisposition) which was an element of the defense of entrapment in Pennsylvania.

Technically, when entrapment is the sole defense, the defendant's conduct has fulfilled all the elements of the substantive crime. See Comment, 59 Iowa L.Rev. 655 (1974); Note, 20 U.Fla.L.Rev. 63, 65 (1967); Mikell, The Doctrine of Entrapment in Federal Courts, 90 U.Pa.L. Rev. 245, 255 (1942). As the court stated in *Whiting v. United States,* 321 F.2d 72, 75–76 (1st Cir. 1963), cert. denied, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114:

> "So far as the individual defendant is concerned the defense has no logical core. The fact that a defendant's actions were induced by a government representative does not mean that he did not commit all of the elements of the offense. If the inducement had come from parties having no connection with the government it would absolve him in no degree." See also *Carbajal-Portillo v. United States,* 396 F.2d 944, 948 (9th Cir. 1968).

Thus, the entrapment defense has to do with the "manufacturing" of a crime by the government; it does not speak to the question of whether the elements of a crime proper have been committed. *Lopez v. United States,* 373 U.S. 427, 434, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). If the defendant's predisposition to commit a crime were equivalent to criminal intent, it should make no difference whether the government or a private person instilled the intent in the defendant's mind; but, as pointed out above, this distinction is the very crux of the defense. See also W. LaFave & A. Scott, Handbook on

Criminal Law 370–71 (1972). By obscuring the difference between "predisposition" and "intent," the majority reaches the erroneous conclusions that entrapment goes to an element of the offense, and that under *Rose, Demmitt* and *Graves* the Commonwealth has the burden of disproving entrapment beyond a reasonable doubt.

Indeed, the error is so obvious that I have found no other court which has made it. True, some federal courts do require the government to disprove entrapment beyond a reasonable doubt. See, e.g., *United States v. Watson*, 489 F.2d 504 (3rd Cir. 1973). But, the federal courts which have so placed this burden on the government have employed their supervisory powers to do it. *Id.* at 511. See also *Dixon v. District of Columbia*, 129 U.S.App.D.C. 341, 394 F.2d 966, 970 (1968). Those courts decided that a charge to the jury allocating the burden of proof between the government and the defendant with respect to the two elements of entrapment was unnecessarily confusing, and that the entire matter of disproving entrapment should be left with the government. *United States v. Watson*, supra. That is, prior practice under the federal law, which was similar to Pennsylvania's prior law,[2] required the defendant to prove by a preponderance of the evidence, that the government's conduct was sufficient to induce a previously innocently disposed person to engage in criminal conduct; thereafter, the government had the burden of proving that the defendant was not a person who fell within the protected class of persons (i. e., those not predisposed to commit a crime).[3] Especially since the government was given the strategic advantage of proving prior crimes to establish predisposition it

2. See, e. g., *Commonwealth v. Conway*, 196 Pa.Super. 97, 173 A. 2d 776 (1961).

3. Compare *Commonwealth v. Klein*, 222 Pa.Super. 409, 411–413, 294 A.2d 815 (1972) (concurring opinion by Hoffman, J.).

was not unfair to place the whole burden of proof upon it when entrapment was put in issue by the defendant.

Of course, the federal courts were struggling with the old standard of entrapment (provocative government conduct plus defendant's innocent predisposition). See *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In Pennsylvania, the Crimes Code has now replaced this old standard with the preferred standard of the Model Penal Code. The Crimes Code, 18 Pa.C.S.A. 313, provides in pertinent part:

"(a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment."

As is readily apparent, the burden of proving defendant's innocent predisposition prior to committing the crime is no longer relevant to the defense of entrapment, so the need for discussion of whether entrapment involves "criminal intent" is obsolescent. Furthermore, subsection b of Section 313 specifically provides that entrapment must be proved by the defendant by the pre-

ponderance of the evidence. Thus, the court today has merely created an agitating historical anachronism. Since the purpose of exercising supervisory powers is to regulate, not to agitate, today's decision would make little sense even if it were to rest on the same basis as those federal cases which it cites approvingly.

Therefore, I dissent.

VAN der VOORT, J., concurs in the result.