## Commonwealth *v.* Boyer, Appellant.

342

343

Submitted March 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Penn B. Glazier,* Assistant Public Defender, for appellant.

*Mary Anne Motter,* Assistant District Attorney, *Ronald L. Buckwalter,* First Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., December 1, 1975:

On January 9, 1973, appellant, Robert V. Boyer, was found guilty after a jury trial of prison breach. A sentence of 1-2 years of imprisonment was imposed but no direct appeal was taken. This appeal followed the lower court's dismissal of appellant's Post Conviction Hearing Act[1] Petition after a hearing was held. We affirm the order of the court below.

---

1. Act of Jan. 25, 1966, P.L. (1965) 1580, §1 *et seq.,* 19 P.S. §1180-1 *et seq.* (Supp. 1975-76).

344

The first issue raised by appellant is whether the lower court erred in its charge to the jury on the defense of insanity. The lower court in its charge stated:

"The defendant has the burden of proving an insanity defense by a fair preponderance of the evidence." Notes of Trial Testimony at 36.

On July 1, 1974, the Pennsylvania Supreme Court decided *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), which held that it was error for the trial court to place on the defendant the burden of proving the defense of intoxication to the charge of murder. *Rose* was subsequently applied to cases involving the defense of insanity shifting the burden of proof of that defense when placed in issue on the Commonwealth. *Commonwealth v. Simms*, 462 Pa. 26, 333 A.2d 477 (1975); *Commonwealth v. Dixon*, 235 Pa. Superior Ct. 415, 341 A.2d 147 (1975).

Because *Rose* was decided long after appellant's time for appeal had expired, and his conviction had become final, appellant asks us to apply *Rose* retroactively to his and thus all cases that had become final prior to the date of the *Rose* decision. We refuse to apply *Rose* to all such cases.

The Post Conviction Hearing Act may be utilized by a petitioner to obtain relief for a violation of "a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right." Act of Jan. 25, 1966, P.L. (1965) 1580, §3(c)(12), 19 P.S. §1180-3(c)(12) (Supp. 1975-76). Therefore, the issue we face is whether the constitution requires the application of *Rose* to cases involving the defense of insanity where the convictions were final (appeals had been exhausted or the time for appeal had expired) before the date of the decision in *Rose*.

In *Commonwealth v. Williams*, 232 Pa. Superior Ct. 339, 331 A.2d 875 (1974), Judge SPAETH speaking for this Court clarified the different situations involving

retroactivity. "The first situation is when the appellate decision is not filed until after the conviction in question has become final, *i.e.,* either no appeal from the conviction was taken and the time for appeal has expired, or an appeal was taken and on the appeal the conviction was affirmed. In this situation a true question of retroactivity is presented, and in deciding whether the appellate decision should be applied retroactively, the court will 'weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Linkletter v. Walker, 381 U.S. 618, 629, 85 S. Ct. 1731, 1738, 14 L.Ed.2d 601, 608 (1965)." *Id.* at 343, 331 A.2d at 876.

"The second situation is where the appellate decision is filed after the conviction but before the conviction has become final, *i.e.,* either the time for taking an appeal from the conviction has not expired, or an appeal has been taken but has not yet been decided. In this situation a true question of retroactivity is not presented, and in reviewing the conviction the court may apply the new rule announced by the appellate decision." *Id.* at 343-344, 331 A.2d at 877.

Judge SPAETH proceeded to discuss a third situation involving cases where appeals *nunc pro tunc* are allowed after the filing of a new appellate decision. However, that situation is not present in this case. It was also recognized in *Williams* that at times a rule set down in an appellate decision will not be applied to cases then pending on appeal because of the nature of the new rule. *See Commonwealth v. Lockhart,* 227 Pa. Superior Ct. 503, 322 A.2d 707 (1974) (applying *Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597 (1973) which established the rule requiring a defendant to be informed on the record of the essential ingredients of a jury trial prior to waiving that right only to cases tried after the date of that decision and not to cases tried before the decision in *Williams* but still pending on appeal.)

A review of the law discloses that the *Rose* decision has been applied to cases tried prior to *Rose* but which were still pending on direct appeal after *Rose* was decided. In *Commonwealth v. Simms,* supra, the Pennsylvania Supreme Court reversed the conviction on the basis of *Rose* as did this Court in *Commonwealth v. Dixon,* supra. Although this Court spoke in *Dixon* of applying *Rose* "retroactively", a close examination of both *Simms* and *Dixon* discloses that both of those cases were before the Court on direct appeal and the convictions of the respective defendants had not become final. Thus, as expressed in *Commonwealth v. Williams,* supra, a "true question of retroactivity" was not presented by *Simms* or *Dixon.* Instead, *Simms* and *Dixon* fall within the second situation described in *Williams* where a new appellate decision is applied to cases where the conviction has not become final.

In determining whether *Rose* should be applied retroactively to cases where the convictions were final prior to the *Rose* decision we must weigh the "merits and demerits" of each alternative. The factors to be considered when deciding whether a decision should be applied retroactively have been set forth by the United States Supreme Court in *Stovall v. Denno,* 388 U.S. 293, 297 (1967):

> "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

Looking first at the purpose to be served by the new rule of law, we observe that the *Rose* decision merely effected a change in the burden of proof when the defense of intoxication was presented by the defendant. The Supreme Court was careful to note that its decision was not based on constitutional grounds but was presented

in "terms of state evidentiary law." *Commonwealth v. Rose,* supra at 386, 321 A.2d at 883. Although decisions of constitutional dimensions may be applied retroactively, *Rose* is not such a decision. *See Roberts v. Russel,* 392 U.S. 293 (1968).

Instead we have in *Rose* a change in the evidentiary law of this Commonwealth as we had in *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959), which removed from the defendant the burden of proof on the defense of alibi. *Bonomo,* however, was not applied retroactively but only to jury instructions given after the date of its decision. *Commonwealth v. Scoleri,* 399 Pa. 110, 160 A.2d 215, *cert. denied,* 364 U.S. 849 (1960). We must, therefore, conclude that the purpose of the *Rose* decision does not require its full retroactive application.

Turning next to the second criteria, the reliance by the authorities on the old standard, we must similarly conclude that *Rose* need not be applied retroactively. Although in the past there was some disagreement as to the burden of proof when the defense of insanity was placed in issue, *see Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970), lower courts generally felt safe in placing the burden on the defendant in the absence of some authority to the contrary. In the many trials in which insanity was presented as a defense the lower courts placed great reliance on pre-*Rose* law.

To reinforce our decision that *Rose* should not be made fully retroactive we need only consider the last criteria set forth by the United States Supreme Court: "the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno,* supra at 297. It is hard to think of a decision with a more disruptive effect on the court system if it were to be applied retroactively than *Rose.* Every case in which insanity was a defense would have to be reversed and a new trial granted unless of course the defendant was

no longer suffering criminal consequences from his conviction. In *Commonwealth v. Godfrey*, 434 Pa. 532, 536, 254 A.2d 923, 925 (1969), the Pennsylvania Supreme Court stated:

> "[I]t is staggering to the imagination to contemplate the chaos which would result if Boykin [*Boykin v. Alabama*, 395 U.S. 238 (1969)] were applied retrospectively. The overwhelming majority of all convictions result from guilty pleas. In a great many of these cases, inadequate *on-the-record* examinations were conducted. This would mean that countless cases would have to be retired if Boykin were applied retroactively." [emphasis original].

The great number of criminal cases in which insanity is a defense makes the above statement appropriate to this case.

After considering the criteria involved in deciding the issue of retroactivity, we must conclude that *Rose* should not be applied to any case where the conviction was final before the date of that decision.

Appellant next argues that his trial counsel was ineffective for failing to object to a reference by a Commonwealth witness at trial to appellant's silence at the time of his arrest. We are satisfied that this claim was waived because of appellant's failure to take a direct appeal following his trial. Section 3 of the Post Conviction Hearing Act provides, *inter alia*:

> "To be eligible for relief under this act, a person . . . must prove the following: . . .
>
> "(d) That the error resulting in his conviction . . . has not been . . . waived."

Waiver is defined in Section 4:

> "(b) For the purposes of this act, an issue is waived if:
>
> "(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised . . . on appeal . . .; and

"(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

"(c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure."

Appellant argues that he did not knowingly waive his right to take a direct appeal because his privately retained counsel refused to take the appeal unless he received more money and appellant did not realize that free counsel would be appointed for him if he still wanted to appeal. This explanation, however, is contradicted by the notes of testimony at appellant's sentencing after trial. There the lower court stated: "Mr. Boyer, I have to inform you of your right to take an appeal from this judgment of sentence to the Superior Court within thirty days, that is your right. *And if you don't have counsel or can't afford counsel, counsel will be furnished free of charge.* You understand that [sic] to be your rights." Appellant responded: "yes." Notes of Testimony at Sentencing Hearing at 5. [emphasis added.] We are convinced that appellant's decision not to take a direct appeal was both voluntary and knowing.

The failure of counsel to make an objection to the admission of certain evidence was a claim that could have been raised on direct appeal since the alleged ineffectiveness appeared in the trial record and trial counsel was no longer in the case. *See Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). Because a direct appeal was not taken the issue has been waived. *See Commonwealth v. Hines*, 461 Pa. 271, 336 A.2d 280 (1975).

After sentence has been imposed by the lower court several alternatives are open to a defendant with respect to his right to appeal. If a defendant chooses to take a direct appeal and he is represented by his trial attorney, there is no waiver of a claim of ineffective assistance of

counsel if that issue is not raised on direct appeal. *Commonwealth v. Dancer*, supra. However, if a defendant is represented by a different attorney on appeal than trial counsel, any claim of ineffective assistance of trial counsel apparent on the record is waived by not being raised on direct appeal. *Id.* A third situation arises when a defendant decides to take an appeal and trial counsel is appointed to represent him, but defendant declines the assistance of trial counsel and chooses instead to prosecute his own appeal. With that set of facts, the Pennsylvania Supreme Court in *Commonwealth v. Strachan*, 460 Pa. 407, 333 A.2d 790 (1975) held that the issue of ineffective assistance of trial counsel was not waived by not being raised on direct appeal.

In the present case a fourth situation appears. Here the defendant knowingly and intelligently failed to take an appeal. Therefore, no one of the foregoing three situations applies because in each of them an appeal was taken. The failure to take an appeal after being informed of his rights indicates to us that the defendant did not desire to test the appellate process and had no serious objections to what happened in the court below. We are not willing to place him in a better position than one who decides to appeal and receives the assistance of new counsel. We hold that appellant waived all issues of ineffective assistance of counsel which were apparent in the trial record by knowingly and intelligently failing to take a direct appeal.

Appellant's final argument is that his trial counsel was ineffective for failing to adequately raise appellant's defense that he was legally insane at the time he committed the prison breach. Because this claim was not apparent in the trial record, it was not waived by the failure to take a direct appeal. *Commonwealth v. Dancer*, supra. However, we agree with the lower court that trial counsel's conduct of the case was not unreasonable. Appellant allegedly committed the prison breach on

June 29, 1971. At trial, defense counsel introduced evidence that a petition for mental commitment had been filed against appellant by his father on March 17, 1971, only a few months before the date of the alleged crime. Two doctors examined appellant on March 18, 1971, and both found appellant capable of standing trial. One doctor wrote in his report: "Seems to be sociopathic —admits he knows right from wrong, but does wrong to achieve his 'psychological needs.' Pt. [Petitioner] states he feels he is able to stand trial and understand what is happening . . . ." Appellant presented no evidence at the PCHA hearing that any uncalled witness would have been helpful to this phase of his case. Under these circumstances, counsel did all he could do and ineffective assistance of counsel has not been established by appellant. *See Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

Order affirmed.

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

I agree with the Majority that *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), is not retroactive, and that trial counsel's handling of the insanity defense was adequate. I cannot agree with the Majority's conclusion that where the alleged ineffectiveness of trial counsel is apparent in the trial record, the petitioner is precluded from raising the issue in a post conviction hearing[1] because he failed to prosecute a direct appeal.

On January 9, 1973, appellant was found guilty by a jury of prison breach and was sentenced to one to two years' imprisonment. Although advised of his appellate rights by the trial court, appellant did not seek

1. Pursuant to Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, §1 et seq., 19 P.S. §1180-1 et seq. (Supp. 1975-76).

review in our Court. On January 25, 1974, however, appellant filed a petition under the Post Conviction Hearing Act, alleging that trial counsel was ineffective for failing to raise an insanity defense adequately, and for failing to object to a reference by the Commonwealth witness to appellant's silence at the time of his arrest. Following an evidentiary hearing, the lower court dismissed the petition.

The Majority first concludes that appellant's decision not to take a direct appeal was both knowing and voluntary. The Majority then relies on *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975), for the proposition that if the alleged ineffectiveness is apparent in the record, the failure to take a direct appeal constitutes a waiver. Thus, the Majority does decide the claim of ineffective assistance for failing to raise adequately the defense of insanity, because that issue could not appear in the trial record. In regard to counsel's failure to object to a reference to appellant's silence at the time of his arrest, however, the Majority concludes that the issue is waived. In my opinion, this conclusion is not warranted by *Dancer*.

In *Dancer*, the Supreme Court held that if ineffectiveness is not raised on appeal, it cannot be considered in PCHA, unless: (1) the petitioner's appellate counsel also served as trial counsel; or (2) the petitioner has new appellate counsel, but the claim of ineffective assistance is based on grounds not appearing in the trial record, or (3) the petitioner can prove "extraordinary circumstances" which justify his failure to raise the issue. *Dancer* does not address the question of the effect of the petitioner's failure to prosecute a direct appeal. The more recent case of *Commonwealth v. Strachan*, 460 Pa. 407, 333 A.2d 790 (1975), however, does provide some guidance. In *Strachan*, appellant rejected the assistance of appointed counsel and chose instead to prosecute his appeal to this Court pro se. In so doing, appellant

raised only the issue of the sufficiency of the evidence. The claim of ineffective assistance of counsel was raised for the first time on appeal to the Supreme Court. The Commonwealth's argument that appellant had waived the issue was rejected: ". . . a defendant who declines the assistance of his trial counsel on appeal and proceeds pro se cannot be deemed to have waived the issue of ineffective assistance of counsel simply because he failed to raise it in his uncounseled appeal." 460 Pa. at 410, 333 A.2d at 791.

The rationale of *Strachan* is equally applicable to the instant case. In both, the defendant knowingly chose to reject the assistance of his trial counsel or any other attorney. The Court noted that one of the reasons underlying *Dancer* was the observation that "it is unrealistic to expect trial counsel on direct appeal to argue his own ineffectiveness." 460 Pa. at 100, 331 A.2d at 438. In applying this consideration to the facts of *Strachan,* the Court stated: "Similarly, it is unrealistic to expect counsel to advise his client that he was ineffective or to expect a layman to ferret out instances of ineffectiveness without the assistance of counsel." 460 Pa. at 410, 333 A.2d at 791. In the instant case, it is just as unrealistic to expect appellant to have "ferret[ed] out instances of ineffectiveness." Thus, appellant's knowing waiver of his right to appeal did not carry with it a knowing waiver of grounds for relief which he had no reason to know existed.[2] In regard to the issue of ineffectiveness,

2. *Commonwealth v. Hines,* 461 Pa. 271, 336 A.2d 280 (1975), does not negate this proposition. In *Hines,* appellant's contention was that his guilty plea was involuntary and unintelligent. Because no direct appeal had been taken, the Supreme Court held that the issue could not be raised for the first time in a PCHA petition. Thus, the knowing waiver of the right to appeal will waive the issue of the voluntariness of a guilty plea under *Hines,* but *Hines* does not address the question of whether a waiver of appellate rights precludes a petitioner from raising ineffectiveness in a PCHA petition.

there is no difference between an uncounseled appeal which fails to raise the issue and no appeal at all. In both cases, the issue of ineffectiveness was never raised before the appellate court. We should, therefore, address the merits of appellant's contention.

At trial, the following colloquy took place between the prosecutor and a Commonwealth witness:

"Q. When you claimed him at the front door did he make any statements to you?

"A. Not more than I asked him how he got outside?

"Q. Did he make a reply to that question?

"A. No, he would not make a reply to it."

Defense counsel failed to object to this reference to the accused's silence. Before deciding whether this constituted ineffective assistance, however, it must first be decided whether a trial judge would commit reversible error if he denied a motion for a mistrial under the facts of this case.

Testimonial reference to an accused's silence is an impermissible violation of the defendant's Fifth Amendment right. The United States Supreme Court has held that the Fifth Amendment forbids comment by either the prosecutor or the court on the accused's failure to testify in his own behalf. *Griffin v. California*, 380 U.S. 609 (1965). In *Commonwealth v. Haideman*, 449 Pa. 367, 371, 296 A.2d 765, 767 (1972), our Supreme Court applied the *Griffin* rationale to reference to an accused's silence at the time of arrest: "The difference between prosecutorial use of an accused's silence at *trial* and the use of an accused's silence at time of *arrest* is, as one court stated, 'infinitesimal.' *Gillison v. United States*, 399 F. 2d 586, 587 (D.C. Cir. 1968). In both instances, the defendant's silence is exploited as evidence of guilt. As the Fifth Circuit observed, '[w]e would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt.' *Walker v. United States*, 404 F. 2d 900, 903 (5th Cir. 1968).

It is clear that '[t]he privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to confession of guilt or a conclusive presumption of perjury.' *Slochower v. Board of Higher Ed. of N.Y.,* 350 U.S. 551, 557, 76 S. Ct. 637, 641, 100 L. Ed. 692 (1956)." Similarly, in *Commonwealth v. Greco,* 227 Pa. Superior Ct. 19, 23, 323 A.2d 132 (1974), our Court held that it was reversible error for the prosecutor to elicit testimony that the defendant was silent at the time of his arrest, even if the reference was inadvertent: "In *United States v. Kroslack,* 426 F. 2d 1129 (7th Cir. 1970), and *United States v. Matos,* 444 F. 2d 1071 (7th Cir. 1971), both cited with approval in *Commonwealth v. Haideman,* supra, similar arguments were found to be without merit. . . . The fact that the reference may have been inadvertent or unintended does not lessen the prejudice caused by the introduction of the testimony."

The United States Supreme Court has recently ruled that testimonial reference to an accused's pre-trial silence was inadmissible. See *United States v. Hale,* 17 Crim. L. Rep. 3094 (June 23, 1975). The Court did not base its decision on constitutional grounds, but chose to exercise its supervisory powers over the federal courts. The Court's reasoning, however, is highly pertinent: "Not only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility but it also has a significant potential for prejudice. The danger is that the jury is likely to assign much more weight to the defendant's previous silence than is warranted. And permitting the defendant to explain the reasons for his silence is unlikely to overcome the strong negative inference that the jury is likely to draw from the fact that the defendant remained silent at the time of his arrest." 17 Crim.L.Rep. at 3096.[3] Thus, had defense coun-

---

3. In *Hale,* the defendant took the stand in order to present an alibi defense. The Government argued that because the defend-

sel moved for a mistrial in the instant case, the trial court would have committed reversible error if it denied the motion. The question of ineffective assistance of counsel, therefore, is squarely presented.

The standard for determining ineffectiveness was set forth in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604-605, 235 A.2d 349, 352-353 (1967): "We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis."

During the hearing held pursuant to appellant's PCHA petition, trial counsel was questioned as to the possible motives behind his decision not to object and request a mistrial:

"Q. Would it be fair to say that portion of the Commonwealth's testimony making reference to the fact that the defendant remained silent at the time he was taken into custody, if you will—

"A. Yes. . . .

"Q. This kind of testimony might well be objectionable, might it not?

"A. Yes. . . .

"Q. Is there any reason why you did not object to that testimony at trial?

---

ant chose to testify in his own behalf, it was permissible to impeach his credibility by proving that he remained silent at the time of his arrest. The Court rejected this contention: "In light of the many alternative explanations for his pre-trial silence, we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant admission." 17 Crim.L.Rep. at 3096.

"A. No, I guess the reasonable—the primary reason at that time at the trial, it didn't seem important enough. Hindsight is better than foresight.

"Q. I understand that. I was wanting to know if there was any reason you might have had to do with trial strategy which caused you not to object at the time.

"A. I don't recall any, right now."

The record reveals, therefore, that trial counsel had no basis at all for failing to object and move for a mistrial. Furthermore, it is obvious that the alternative not chosen offered a "potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney*, supra, at 605, n.8, 235 A.2d at 353, n.8. If we are to adhere to our Supreme Court's statement that the standards for ineffectiveness are meaningful and not simply fictional, see *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), we must find that appellant was not afforded effective representation.

I would reverse and grant a new trial.

SPAETH, J., joins in this opinion.