UNITED STATES of America ex rel.
Robert Victor BOYER

v.

Ernest S. PATTON.

Civ. A. No. 77–166.

United States District Court,
E. D. Pennsylvania.

Sept. 6, 1977.

882

Marc J. Sonnenfeld, Philadelphia, Pa., for petitioner.

John A. Kenneff, Asst. Dist. Atty., Lancaster, Pa., for Commonwealth.

OPINION

LUONGO, District Judge.

Before me for approval is the Report and Recommendation * of the United States Magistrate that relator be granted a writ of habeas corpus (28 U.S.C. § 2241 *et seq.*). Certain issues were disposed of by order prior to hearing and the only issues remaining in this case are whether relator is precluded from obtaining habeas corpus relief because he failed to appeal his state court conviction and, if he is not so precluded, whether he was denied effective assistance of counsel at trial because his attorney did not object to a Commonwealth witness' testimony that relator remained silent at the time of arrest.

Relator was convicted of prison breach (18 P.S. § 4309, *repealed,* Act of Dec. 6, 1972, P.L. 1482, No. 334, § 5(a)) after a jury trial in the Court of Common Pleas of Lancaster County, Pennsylvania, on January 9, 1973. A brief description of the trial is necessary for a full understanding of relator's claims.

The Commonwealth called only two witnesses. The first was Robert Steffy, a Lancaster County Prison guard, who testified that relator was incarcerated at that prison on June 29, 1971 [1] and that early that evening relator, suffering from a broken leg, was brought into the prison from outside of it by two other men. Steffy stated that to his knowledge relator had not had permission to leave the confines of the prison. At the end of direct examination, the prosecution elicited the following testimony:

"Q. When you claimed him [relator] at the front door did he make any statements to you?

---

* Appended hereto as Appendix A.

1. The trial transcript (at p. 4) contains a reference to June 29, 1972 in a discussion of the prison breach. All other references in the transcript are to June 29, 1971, and it thus appears that the 1972 date was a typographical error.

A. Not more than I asked him how he got outside.

Q. Did he make a reply to that question?

A. No, he would not make a reply to it."

Trial Transcript, *Commonwealth v. Boyer,* No. 723, 1972 Term (C. P. Lancaster, Crim.Div.) [hereinafter cited as Trial Tr.] at 6–7.

Relator's trial counsel did not object to those questions. On cross-examination Steffy repeated that he saw relator brought into prison from outside of it and added that relator was just one of twelve inmates who had broken out of prison that evening. The Commonwealth's second witness, Deputy Warden Stork, testified that a headcount conducted by him on June 29, 1971, showed that twelve prisoners were missing that evening.

Relator's defense was insanity. Defense counsel called the Deputy Clerk of the Court of Common Pleas, William C. Wagner, who testified that there was a March 17, 1971 docket entry stating that on that date relator's father petitioned the court to commit relator as mentally disabled, that the court directed that relator be examined by two licensed physicians, and that the court made no further disposition of the petition. The only other defense witness was relator himself. Relator testified that he was an "extensive drug user" before entering Lancaster County Prison on February 25, 1971, and that he "was going through a psychological withdrawal" while at the prison. Trial Tr. at 18. He characterized his mental condition as "paranoid schizophrenic" (*id.* at 19) and said that he "was in a very, very depressed mood" because he was "continuously being locked up," beaten by prison guards, and placed in a strip cell called the "bull pen" (*id.* at 20–21). On the evening of June 29, relator saw other inmates "leaving through the shower room" and he followed them, ending up on the prison wall. *Id.* at 21. He stated that he did not know what happened next, except that he ended up on the ground with a broken leg. He "realized then that [he]

was doing something wrong," and, through a friend who he encountered, he "sent for aid to take [him] to the prison." *Id.* at 22. He was returned to prison by his brothers, who lived nearby. *Id.* Relator insisted that he did not intend to breach prison, but acted as he did because of his distraught mental state. *Id.* at 23.

In his charge, the trial judge explained to the jury the elements of prison breach. He then summarized the testimony of each of the witnesses, including Steffy's testimony that, when brought into the prison, relator did not reply when asked "how he got outside" the prison. Trial Tr. at 32. The judge summarized the defendant (relator)'s case as follows:

"It is the contention of the defendant that he did no [sic] intentionally break prison. It is his contention that if he was outside the prison, he was not there because he intended to breach prison or escape."

*Id.* at 35.

The judge added that relator was asserting the defense of insanity and instructed the jury as to the legal meaning of that term, noting that relator had "the burden of proving an insanity defense by a fair preponderance of the evidence." *Id.* at 36. Defense counsel did not object to the charge. After deliberating for forty minutes, the jury returned a verdict of guilty.

Immediately after trial, relator was sentenced to pay a fine and to imprisonment, with the prison term to be served after relator finished serving another prison term imposed in another case. Relator is still in custody pursuant to the sentence.

Following sentencing, the judge informed relator of his right to appeal:

"THE COURT: * * * * *

Mr. Boyer, I have to inform you of your right to take an appeal from this judgment of sentence to the Superior Court within thirty days, that is your right. And if you don't have counsel or can't afford counsel, counsel will be furnished free of charge. You understand that to be your rights?

DEFENDANT: Yes."

Sentencing Transcript, *Commonwealth v. Boyer, supra,* at 5.

Relator did not appeal.

On January 4, 1974, relator filed a petition for relief under the Pennsylvania Post Conviction Hearing Act (PCHA), 19 P.S. §§ 1180–1 *et seq.* A hearing was held in the Court of Common Pleas on April 23, 1974 at which relator and his prison breach trial counsel were the only witnesses. The hearing dealt primarily with the attorney's presentation of relator's insanity defense, but at one point the attorney was questioned about his failure to object to Steffy's reference to relator's silence at the time of arrest:

"Q. This kind of testimony might well be objectionable, might it not?

A. Yes, sir.

Q. Is there any reason why you did not object to that testimony at trial?

A. No. I guess the reasonable—the primary reason at that time at the trial, it didn't seem important enough. Hindsight is better than foresight.

Q. I understand that. I was wanting to know if there was any reason you might have had to do with trial strategy which caused you not to object at the time.

A. I don't recall any, right now."

PCHA Hearing Transcript, *Commonwealth v. Boyer, supra* [hereinafter cited as PCHA Tr.], at 23–24.

The Court of Common Pleas denied PCHA relief (*Commonwealth v. Boyer, supra,* opinion and order filed Sept. 13, 1974), and the Superior Court of Pennsylvania affirmed (237 Pa.Super. 341, 352 A.2d 431 (1975)).[2] The Pennsylvania Supreme Court denied a petition for allowance of appeal (No. 2282 Allocatur Docket, per curiam order filed Feb. 20, 1976).

On September 7, 1976, relator filed this petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. Because relator was tried and convicted by a state court within the Eastern District of Pennsylvania, the case was transferred to this district (*see* 28 U.S.C. § 2241(d)). Relator contended that he had not knowingly and intelligently waived his right to appeal his conviction in the state courts and thus was not precluded from obtaining federal habeas relief. On the merits he contended that (1) his trial counsel had been ineffective in not adequately presenting his defense of insanity, (2) the trial court had erred in placing the burden of proving insanity on him, and (3) his trial counsel had been ineffective in failing to object to Steffy's reference to his silence during arrest. On March 9, 1977, I entered an order approving the Report and Recommendation of the United States Magistrate that the petition be denied as to the first two substantive claims and that a hearing be held as to the third claim and the waiver question.

A hearing was held before the United States Magistrate on April 13, 1977, at which relator was the only witness. Relator explained that he had not appealed his conviction because he lacked counsel. He testified that his attorney had been retained by his family, that the fee was being paid in weekly installments, and that the attorney had told relator that unless he was paid more money he would not represent relator on appeal. Notes of Testimony—Evidentiary Hearing (Doc. No. 15) [hereinafter cited as N.T.] at 13–14. Relator did not pay more money and the attorney did not provide appellate representation. N.T.

2. In its opinion the trial court rejected relator's contentions that his counsel was ineffective in preparing the insanity defense and that the trial court erred in placing the burden of proving insanity on the defendant (relator); it did not address any other issues. The Superior Court concurred with the trial court on those issues (237 Pa.Super. at 344–48, 350–51, 352 A.2d at 432–34, 436) and in addition held that under §§ 3(d) and 4(b), (c) of the PCHA, 19 P.S. §§ 1180–3(d), 1180–4(b), (c), relator was not eligible for PCHA relief for ineffectiveness of counsel in failing to object to the trial reference to relator's silence during arrest because the alleged defect appeared in the trial record and relator had failed to directly appeal his conviction (*id.* at 348–50, 352 A.2d at 434–36). Judges Hoffman and Spaeth dissented from the latter holding. *Id.* at 351–57, 352 A.2d at 436–39.

14–15, 19–20. Although at the sentencing hearing the trial judge had informed relator of his right to appointed counsel on appeal, relator explained that he had not believed that the instruction was applicable to his situation. He was taking drugs— Valium and some sleeping medication—on the day of trial and sentencing and his mental condition was "very unstable." N.T. 16–17. In addition, he had been unable to obtain appointed counsel for appeal from an earlier conviction on which he had represented himself and therefore assumed that he would be unable to obtain appointed counsel for an appeal from the prison breach conviction. N.T. 17–19. Finally, relator explained that he had not realized he had grounds for direct appeal until he had an opportunity to consult with appointed counsel after he filed his PCHA petition. N.T. 21–23. On the merits, relator relied on the PCHA hearing testimony of his trial counsel that there was no tactical reason for counsel's failure to object to the reference to relator's silence during arrest. N.T. 32–33.[3]

In his Report and Recommendation, the United States Magistrate concluded that relator did not knowingly and intelligently waive his right to appeal. The failure to appeal was attributed to lack of legal advice. The magistrate found that relator did not request appointed counsel because of his inexperience and confusion regarding his right to counsel on appeal, which continued despite the information given relator by the trial judge after sentencing.

On the merits, the magistrate concluded that a writ of habeas corpus should be granted because relator was denied his federal constitutional right to effective assistance of counsel at trial. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, reference at trial to relator's silence at the time of arrest was grounds for a mistrial. The magistrate therefore concluded:

3. It was pointed out to the court that the trial attorney could not attend the hearing because he was in Illinois. The attorney had been dis-

"Failure of the relator's counsel to so move, not for any tactical reason, but for apparently no reason at all except oversight, is an instance of ineffectiveness which cannot be ignored."

Report and Recommendation (Doc. No. 14), at 4.

### Discussion

### Waiver of Appeal

As a matter of comity between state and federal courts the rule has evolved that a federal habeas petitioner may not be granted relief if he has bypassed state court procedures which would have afforded him an opportunity for redress. *Wainwright v. Sykes*, 433 U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fay v. Noia*, 372 U.S. 391, 438–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *See also Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). In *Fay v. Noia, supra*, the Supreme Court articulated the test by which the habeas petitioner's conduct is to be judged:

"The classic definition of waiver enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. [Citation omitted.] At all events we wish it clearly

barred in Pennsylvania for reasons unrelated to his representation of relator.

understood that the standard here put forth depends on the considered choice of the petitioner. [Citations omitted.] A choice made by counsel not participated in by the petitioner does not automatically bar relief."

372 U.S. at 439, 83 S.Ct. at 849 (footnote omitted).

Applying this standard, the United States Magistrate concluded on the basis of the evidence presented at the hearing that relator did not knowingly and understandingly forego his right to appeal and therefore is not precluded from obtaining habeas relief.

After the magistrate filed his report, the Supreme Court decided *Wainwright v. Sykes, supra.* In that case, the habeas petitioner sought federal review of a matter which, under the applicable state procedural rule, was not preserved for appeal by objection at trial. The Court held that the deliberate bypass test of *Fay* was not applicable to that situation; instead the habeas petitioner was precluded from obtaining habeas relief unless he could show some "cause" for noncompliance with the state procedural rule and "actual prejudice" resulting from the alleged constitutional violation. 433 U.S. at ——, 97 S.Ct. at 2505–06. The Court declined to define "cause" and "prejudice" except to state that the standard "is narrower than the standard set forth in . . . *Fay v. Noia*" and that, on the record before it, the test was not met. *Id.* at ——, 97 S.Ct. at 2507, 2508–09. The Court also declined to state whether the new standard was applicable to a case in which the habeas petitioner bypassed his right to directly appeal his conviction. *Id.* at —— n. 12, 97 S.Ct. 2507 n. 12. In a concurring opinion, Chief Justice Burger suggested that the deliberate bypass standard of *Fay* was still applicable to such matters as waiver of appeal, which involved "the exercise of volition by the defendant himself with respect to his own federal constitutional rights." *Id.* at ——, 97 S.Ct. at 2509 (Burger, C. J., concurring). The cause and prejudice standard only applied to such matters as contemporaneous objection at trial, where the "critical procedural decision" rested with the trial attorney

rather than with his client. *Id.* at ——, 97 S.Ct. at 2509–10.

It is evident that *Wainwright v. Sykes* has clouded the law of habeas corpus in this area. On the basis of Chief Justice Burger's reasoning, it is possible that the *Fay* deliberate bypass standard is still applicable to relator's failure to appeal in this case. I accept the magistrate's conclusion that, applying that standard, relator is not precluded from obtaining federal habeas relief. In any event, whatever the applicable standard, I need not and do not dispose of relator's claim on the basis of his waiver of appeal, for I conclude that on the merits relator is not entitled to habeas relief.

*Competency of Trial Counsel*

 A writ of habeas corpus can only be granted to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The ground for relief asserted by relator is that he was denied his federal constitutional right to effective assistance of counsel at a criminal trial. It is well established that the right to counsel guaranteed by the Fourteenth Amendment "is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 711 n. 14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Generally, this right requires that an attorney's representation be "within the range of competence demanded of attorneys in criminal cases." *Id.* at 771, 90 S.Ct. at 1449. As stated by the Third Circuit:

"[T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place."

*Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970) (footnote omitted); *accord, United States ex rel. Green v. Rundle,* 434 F.2d 1112 (3d Cir. 1970).

Relator's representation at trial must be judged by this standard.

Relator's claim of ineffective assistance in this proceeding is based on his attorney's

failure to object to Steffy's trial testimony that relator would not answer Steffy's questions when arrested. At the time this case was tried—January 1973—the Supreme Court had held that, under the Due Process Clause of the Fourteenth Amendment and the Self-Incrimination Clause of the Fifth Amendment, an accused had the right to remain silent at the time of arrest and statements elicited by the police at the time of arrest without warning of the right to remain silent were inadmissible at trial. *Miranda, supra.* The Court had also held that neither the prosecutor nor the court could comment at trial on the defendant's failure to testify on his own behalf during trial. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Court had not specifically decided, however, whether it was error to comment at trial on the accused's silence at the time of arrest.[4] *But see Miranda, supra,* 384 U.S. at 468 n. 37, 86 S.Ct. 1602. At least four United States Courts of Appeals had so held, however. *See United States v. Kroslack,* 426 F.2d 1129, 1130–31 (7th Cir. 1970); *Gillison v. United States,* 130 U.S.App.D.C. 215, 399 F.2d 586 (1968); *United States v. Mullings,* 364 F.2d 173, 174–75 (2d Cir. 1966); *Baker v. United States,* 357 F.2d 11, 13–14 (5th Cir. 1966). More important, the Supreme Court of Pennsylvania, in an interpretation of the Federal Constitution that was binding on the state trial court, had agreed with these courts of appeals. *See Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765 (1972). Counsel therefore should have known that Steffy's testimony was objectionable.

Relator contends that his trial counsel's testimony at the PCHA hearing establishes that the attorney did not realize the importance of objecting to Steffy's reference to his silence during arrest. He argues that he thus was deprived of effective assistance of counsel since the attorney did not make a conscious decision not to object and in fact made no decision at all. In making this argument, relator relies on *United States ex rel. Johnson v. Johnson,* Civil No. 71–1980, slip op. at 7 (E.D.Pa., Apr. 22, 1975), *rev'd,* 531 F.2d 169 (3d Cir.), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976), in which the district court stated that "[r]elator may not now validly complain that his trial counsel made the wrong choice, but he may properly challenge counsel's failure to appreciate the choice to be made . . . ."

■ Relator's reliance on the district court opinion in the *Johnson* case is considerably weakened by the fact that that ruling was reversed on appeal. More to the point, however, even assuming that relator's interpretation of his attorney's testimony at the PCHA hearing is correct, the attorney's conduct is only important to this habeas proceeding insofar as it prejudiced defendant. It may be assumed that, insofar as relator's counsel did not realize the objectionable nature of Steffy's testimony and make a conscious decision as to whether to object, the attorney failed to exercise the customary skill and knowledge of a reasonable member of his profession. If the lack of subjective awareness did not result in harm to relator's case, however, it was harmless and does not entitle relator to relief in this proceeding. *See generally Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (harmless error in habeas corpus cases); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) (harmless error generally). In *Johnson,* for example, the alleged error of trial counsel was the failure to

---

4. Recently, the Supreme Court has held that if the accused has been warned of his right to remain silent and has exercised that right, it is fundamentally unfair—and a deprivation of due process—to allow the accused's silence to be used at trial since the "*Miranda* warning" carried an implied assurance that silence would carry no penalty. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *cf. id.* at 626–36, 96 S.Ct. 2240 (dissenting opinion) (discussing contention that use of defendant's silence violates privilege against self-incrimination); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (prohibiting reference to silence as exercise of supervisory authority over federal courts). Since relator's ineffective assistance claim must be judged according to the state of the law at the time of trial, the Court's recent rulings have no bearing on this case.

888

allow relator to testify at his trial or to present any evidence on his behalf, a decision which, in the trial court's opinion, greatly increased the relator's chances of conviction. *Johnson, supra*, slip op. at 3, 8. In this case, even if it is assumed that the attorney's PCHA testimony automatically leads to the conclusion that he did not consciously decide not to object to Steffy's testimony, I do not believe that that is the issue which controls this case. The focus must be not on whether a reasonable, competent attorney would have made a conscious decision as to whether to object, but on whether, given the facts of this case, a reasonable, competent attorney would have objected. If the answer to that question is no, relator was not prejudiced by his attorney's conduct and did not have ineffective legal representation.

Viewing the issue from this perspective, it is clear that counsel's failure to object cannot be judged in a vacuum; it must be assessed in the context of the entire trial. The only adverse inference that could be drawn from Steffy's testimony as to relator's silence was that relator had gotten outside of prison in a manner not authorized by prison officials. The record discloses, however, that that fact was conceded by relator at trial, although by cross-examination relator's trial counsel did attempt (to no avail) to discredit Steffy's testimony that he had witnessed relator entering the

prison from the outside (*see* Trial Tr. at 7–9; *see also id.* at 22–23).

As part of the defense presentation, the fact that relator had left the confines of the prison by unauthorized means was established by the testimony of relator himself. During direct examination, relator told how he had followed his fellow inmates to the wall through the shower room and how, after he had "ended up on the ground" with a broken leg, he had sent for aid to take him back inside the prison. *Id.* at 21–23.[5] Rather than contest the unauthorized exit from prison, relator—and his trial counsel—concentrated on a defense of insanity. This view of the defense strategy is confirmed not only by the trial record itself, but by the testimony of relator in subsequent proceedings. *See, e. g.,* PCHA Tr. at 7, 13, 34; N.T. 26–27.

Viewing the trial in this context, it is not surprising that relator's attorney did not object to Steffy's reference to relator's silence during arrest. The unfavorable inference which could be gleaned from the testimony related to an issue that was not seriously in dispute, the absence of relator from the prison without authorization. The trial attorney's subsequent explanation of his conduct—"at that time at the trial, it didn't seem important enough" (PCHA Tr. at 24) —thus seems totally correct. His inability

5. The following excerpts from relator's testimony are illustrative:

"Q That night that this happened about eight o'clock or so what were you doing?
A We were out for block out and there was people who was leaving through the shower room and I was told to follow, which I did. And you know, it's hard to explain, the only thing I can say is that I ended up on the wall and there was so much fear in me I didn't know which way to turn.
 * * * * * *
Q How did you happen to break your leg?
A That I don't know, like you asked me how I ended up on the ground, I couldn't answer that.
 * * * * * *
Q What happened after you hit the ground?
A After I hit the ground I realized then that I was doing something wrong. So I seen a friend, you understand, and I sent for aid to take me to the prison.

Q Who came?
A My two brothers came.
Q Where did your brother live?
A He lived at that time on South Queen Street, directly across from the prison.
 * * * * * *
Q I see, now Mr. Steffy testified about what happened at the gate. Will you tell us what happened there, was your mother there or anything like that?
A Right. My mother did arrive on the scene shortly after my brother showed up, my two brothers. And I was taken in side to the vestibule where I talked then to a guard, whose name was Dave Wilson. At this time he called Mr. Steffy and Mr. Steffy did come and when he came I was already in the vestibule and then he opened up the electric gate and let me in and he started to question me."
Trial Tr. at 21–23.

at the PCHA hearing to articulate reasons of trial strategy in support of his failure to object does not undermine this conclusion. I am satisfied that any reasonably competent trial counsel in his situation might well have done the same thing. Indeed, it is conceivable that the evidence of relator's silence might support the insanity defense, lending credence to relator's contention that at the time of the alleged prison breach he was so upset and distraught that he did not know (or at least was incapable of explaining) what he had done. Objection to the question at issue might have raised doubts in the jurors' minds as to whether relator's statements during arrest would show that his mental state was better than he claimed.

I conclude that relator's right to effective assistance of counsel was not violated in this case. His attorney's representation at his trial did not fall below the average level of competence of members of the legal profession. Since relator was not denied any federal right, his petition for a writ of habeas corpus will be denied.

## APPENDIX A

### REPORT—RECOMMENDATION
#### APRIL 28, 1977
RICHARD A. POWERS, III
UNITED STATES MAGISTRATE

Relator, a state prisoner, seeks habeas corpus relief in this Court. The relator was convicted on January 9, 1973, after a jury trial, of the crime of prison breach. At that time, he was sentenced to pay a fine of one hundred dollars ($100.00) plus the cost of prosecution, and then to be imprisoned for not less than one (1) nor more than two (2) years. No post trial motion nor any direct appeal was filed by the petitioner or his counsel.

On January 4, 1974, the relator filed a petition under the Post Conviction Hearing Act (PCHA), which he amended on January 25, 1974. On April 18, 1974, the relator filed a petition to have the notes of testimony transcribed. A hearing was held before the trial judge on April 23, 1974, and the petition was denied and an opinion was filed on September 13, 1974.

A subsequent appeal to the Superior Court of Pennsylvania raised two (2) other issues in addition to those raised here. Three (3) of the four (4) were held to have been waived by the relator's failure to take a timely direct appeal. The Supreme Court of Pennsylvania denied allocatur on February 20, 1976, at which time the relator submitted his petition for a writ of habeas corpus to this Court. On February 15, 1977, this Court granted the relator a hearing on two (2) of the grounds raised:

(3) Whether appellant's trial counsel was ineffective in failing to object when it was elicited from a Commonwealth witness that appellant remained silent at the time of his arrest?

(4) Whether appellant can be said to have knowingly and intelligently waived his right to take a direct appeal?

Accordingly, after hearing held, this Court finds that relator did not knowingly and intelligently waive his right to directly appeal his conviction. Additionally, we find that his counsel, in failing to object to testimony as to his silence at arrest, was ineffective.

In *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Supreme Court clearly set forth the conditions for waiver, i. e. "an intentional relinquishment or abandonment of a known right or privilege". Intelligent waiver, the Court concluded, must be judged by the circumstances of each case.

This definition was affirmed in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The Court therein also described the situation when denial of federal habeas corpus relief might be warranted.

" . . . (to a relator/applicant) who has *deliberately bypassed* the orderly procedure of the state courts and in so doing has forfeited his state court remedies." 372 U.S. 391, 438, 83 S.Ct. 822, 849. (Emphasis added).

Indeed, the Court went on to interpret the guidelines of *Johnson, supra*, as imply-

ing the foregoing of a privilege, after consultation with competent counsel, for the furthering of a strategic, or otherwise deliberate reason.

While the relator in the instant case was apprised of his right to appeal by the trial judge; due to his inexperience and confusion as to his right to appointed counsel even after conviction and sentencing, he refrained from requesting appointed counsel, and was left with no legal advisor whatsoever; and thus, it cannot be unequivocally stated that he deliberately failed to file an appeal to advance his case in another direction. Consequently, the relator should not be barred from federal habeas corpus relief. *United States ex rel. Simon v. Murphy*, 349 F.Supp. 818 (E.D.Pa. 1972).

In support of this finding, we refer to *Commonwealth v. Schroth*, 458 Pa. 233, 328 A.2d 168 (1974) in which defendant was convicted of first degree murder. The trial judge explained the right to file post trial motions, and the right to appointment of counsel, as well as the result of failure to file; namely, a waiver of such motions. However, the defendant was not informed that failure to file would extinguish any right to raise on appeal *any issue* that could have been presented in the post trial motions. Consequently, the Superior Court determined that it was not clear whether a knowing and intelligent waiver had been made:

"However, for such waiver to be effective the record must affirmatively demonstrate that the appellant was aware of his right to file post trial motions and that he knowingly and intelligently decided not to do so . . . In short, defendant could have concluded that his failure to file post trial motions would not prejudice his rights on appeal, but would only operate to deny him the right to have the trial court consider the errors he alleged." 458 Pa. 233, 328 A.2d 168, 169.

Thus, under the circumstances of this case, despite the trial judge's proper explication of the relator's right to take a timely appeal, we find his failure to file either an appeal or post trial motions was not done in a knowing, intelligent and deliberate manner required to constitute a waiver under our federal standard.[1]

Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it is clear that reference at trial to one's silence at time of arrest is a violation of a constitutionally protected right. Indeed, the Supreme Court, in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), interpreted a post arrest silence as merely an exercise of one's *Miranda* warning rights. In *Doyle*, a case similar to the one at hand, in that both arose in state court, the Court referred to *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), to note that, " . . . the *Hale* court considered silence at the time of arrest likely to be ambiguous and thus of dubious probative value". The Court concluded that, "the use for impeachment purposes of petitioner's silence at the time of arrest . . . violated the Due Process Clause of the Fourteenth Amendment".

In light of the foregoing, we find that the testimonial reference to the relator's silence was an invasion of a constitutionally protected right; therefore, a motion for a mistrial was warranted and virtually undeniable.

Failure of the relator's counsel to so move, not for any tactical reason, but for apparently no reason at all except oversight, is an instance of ineffectiveness which cannot be ignored. The relator was entitled to be represented by a normally skilled legal counsel. Without competent counsel, neither this relator nor any defendant can make intelligent choices, in each one's best interests and in the interests of justice.[2] See, *Moore v. United States*, 432 F.2d 730 (3 Cir. 1970); *United States ex rel. Green v. Rundle*, 434 F.2d 1112 (3 Cir. 1970).

---

1. Also, relator was under some mental distress at the time of trial and had taken valium as prescribed by his psychiatrist on the day of trial.

2. The Court takes note of the fact that due to trial counsel's disbarment in Pennsylvania and relocation to Illinois, he was unable to be present for the hearing in this Court.

We find, therefore, that the relator's counsel was ineffective in failing to object at trial, and that the relator's failure to file a post trial motion and a direct appeal was not done knowingly and intelligently to deliberately bypass state procedures, and thus did not constitute a waiver of federal habeas corpus. *Fay v. Noia, supra.*

## RECOMMENDATION

Now, this 28th day of April, 1977, IT IS RESPECTFULLY RECOMMENDED that the petition for a writ of habeas corpus should be GRANTED.

(s) Richard A. Powers, III
RICHARD A. POWERS, III
UNITED STATES MAGIS-TRATE